**PARRISH et al. v. LEDERER, Collector of Internal Revenue.**

(District Court, E. D. Pennsylvania. June 14, 1926.)

No. 9414.

Internal revenue ⚖=9(27).

Relative to excess profits tax, agreement of partner with other partners "to personally stand any loss that might occur to partnership" on two accounts *held* not to inure to benefit of firm, but of other partners.

At Law. Action by Morris L. Parrish and others, partners as Parrish & Co., against Ephraim Lederer, Collector of Internal Revenue. Judgment for plaintiffs.

Ballard, Spahr, Andrews & Madeira, of Philadelphia, Pa., for plaintiffs.

George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

Sur Rule for Judgment. Sur Statutory Demurrer. Sur Case Stated.

DICKINSON, District Judge. We set forth this case under the three above captions, for the reason that it may be before us in any one of these forms, and we have no access to the record to learn in which of the three forms it is before us. The facts, to the extent, at least, of the evidentiary facts are admitted.

The plaintiff firm during the year 1917 was engaged in the bond and brokerage business. It was composed of the three partners, who had contributed to the capital stock, and for the year 1917 the partners received profits distributed on the basis of 60 per cent. to Morris L. Parrish, 25 per cent. to George R. McClellan, and 15 per cent. to Percival Parrish, who were the individual partners. On April 15, 1918, the firm filed an excess profits return for the year 1917 as required by law. The excess profits tax appearing by this return was $1,222.73, which was duly paid. Subsequently the business transactions

of the partnership were inquired into by the Commissioner of Internal Revenue, and as a result of the examination an additional excess profits tax was assessed against the firm for the year 1917 in the sum of $3,357.01, which was duly paid under protest, and its repayment demanded on or about August 30, 1920. On October 5, 1920, the firm filed a claim for a refund of the sum of $3,164.52 of the said sum of $3,357.01 paid as above stated. The claim for refund was rejected on March 21, 1922, and the above action followed.

The sole question raised is the liability of the firm to the payment of the tax represented by this refund claim. The assessment of the additional excess profits tax was, as claimed by counsel for the United States, "based upon an increase of the invested capital of the partnership," from a sum "as claimed by the partnership in the original return" to an increased sum as found by the collector," and the disallowance of losses to the partnership" of certain items. These are designated as follows:

(1) Bad debts disallowed..........$13,740.27
(2) Items entered in a so-called error
    account totaling ................ 1,764.70
                                                ——————
    Total .....................$15,504.97

There were other items in the assessment of the increased tax, but the above are the only ones in dispute. The explanation of them arose out of the agreed facts that during the year 1919 the firm was doing business, among others, with two customers over whose accounts a difference of opinion arose among the partners. All the partners, except Morris L. Parrish, were of the opinion that the accounts should be closed out at a time when this could be done without loss to the firm. Morris L. Parrish thought otherwise, and that the accounts would prove ultimately to be good and should not be closed. This difference was adjusted by Morris L. Parrish agreeing to personally make good any loss which might otherwise occur on these two accounts. The accounts proved to be bad, and losses were actually sustained on them for the year 1917 in the sum of $13,740.27. The transaction was adjusted in the books of account of the firm by the omission of a charge to profit and loss account, and by charging the sum of the loss to the "capital account" of Morris L. Parrish, whatever this may mean. We assume it to mean that the loss was charged against Morris L. Parrish as an individual partner, thereby reducing whatever sum would otherwise have appeared to have been due to him by the firm as his share of its net assets.

This presents, as we understand it, the question to be decided. The Commissioner viewed the transaction to have been one of a loss suffered by Morris L. Parrish individually, and not by the firm. He in consequence assessed the individual income of this partner on the basis of an allowance of this loss, but refused the allowance out of the firm income. In this the plaintiff thinks he was in error. The only room for a difference, as we see it, is in the concept of what the undertaking of Morris L. Parrish was. The statement of this possible difference seems to be merely a difference in verbiage. It really, however, is a difference in substance. If this undertaking of Morris L. Parrish had not been made, the firm would have sustained this loss, and it follows should have been allowed for it in the determination of the taxes payable. The final result would have been that what the partners would have received from the firm in that event would have been lessened by the sum of the proportionate share of each in this loss. If, on the other hand, no such loss had been incurred, no deduction would have been made from the taxable profits on this account, and the final result would have been that the individual partners would have been correspondingly benefited by each receiving that much more from the firm than would have been received if the loss had been incurred. The loss may thus be viewed under the concept of the loss of the firm, or it may be viewed under the concept of the ultimate loss of the individual partners.

The broad proposition of Morris L. Parrish to make the loss good might thus have taken one or the other of two forms. He might have agreed to make good the loss to the firm. If he did this, as the firm would have sustained no loss, the individual partners would have suffered none. He might, however, have in effect said to his fellow partners: "The firm will suffer this loss, if there be one, and, if there is, I will make up to each of you your individual partnership shares of that loss." The practical loss (except so far as it affected the tax paid through the difference in rates) to the partners would have been the same. This would have been likewise true of the net result to Morris L. Parrish. The question of whether or not the loss should have been reckoned in the assessment of the firm tax, or in the assessment of the personal tax of Morris L. Parrish, is seen to thus turn upon the narrow question of whether the loss befell the firm. If it did, the individual income of Morris L. Parrish was diminished by his share of this loss, and was further diminished by the shares of the

loss of his fellow partners, which he was called upon to make good. If, on the other hand, he made good to the firm, then the firm lost nothing, and by the same token the partners lost nothing through the firm. The loss of Morris L. Parrish would have then been measured by the loss which he had saved to the firm.

The real question presented illustrates the distinction between what are called evidentiary facts and ultimate facts. One of the former is the answer to the question of what was the undertaking of Morris L. Parrish. Did he undertake to indemnify the firm against any loss, or did he undertake to make good to each of the individual partners his proportionate share of whatever loss the firm sustained? We must turn to the statement of the agreed facts for an answer to this question. We find his agreement stated to be "to personally stand any loss that might occur to the partnership on the two accounts." The sole question, then, becomes one of the construction of this agreement. Did it mean that he would make good to the firm any loss which it might otherwise sustain, so that the ultimate fact result would be that the firm would not suffer any loss, or did he mean to agree with his fellow partners, that, as between them and himself, he would bear the whole loss which might befall the firm? In construing any agreement, light is thrown upon it by the situation of the parties to the agreement. The parties here were the individual partners, not the firm. The loss, if there was one, was a loss which would primarily fall upon the firm. This, it is true, would result secondarily in the loss to the partners individually. Strictly speaking, this was the only loss which affected them, and if they were protected from this loss they need not care whether the firm suffered a loss or not.

In this view of the transaction the language of the agreement with them can be fairly construed to mean, "Let the firm take its chances on a loss from these two accounts; if the loss comes, I will suffer my own share of the loss as a partner, and in addition to that I will make good to each of you what would otherwise be your respective proportionate shares of that loss." If the agreement is thus construed, the firm did meet with the loss, and, having met with it, the loss should be taken into account in the assessment of the tax. It follows that the plaintiffs are entitled to recover this part of the tax paid by them.

Clause 9 of what is called the "agreed state of facts" is in the form of a case stated, and, following this plaintiffs have the right to judgment for the stipulated sum, with costs. In view, however, of the uncertainty of just what the form of the judgment should be, none is now entered; but the parties have leave to enter judgment in favor of the plaintiffs and against the defendant for the sum of $3,164.52, with interest thereon from August 30, 1920, with costs of suit, in such form as counsel may agree.